IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Angelica Delgado,<br><br>    Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner<br>of Social Security,<br><br>    Defendant. | No. CV 07-00150-TUC-CKJ (JCG)<br><br>**REPORT AND RECOMMENDATION** |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. §§ 405(g). The case has been referred to the United States Magistrate Judge pursuant to the Rules of Practice of this Court.

Pending before the court is an opening brief filed by Plaintiff on November 1, 2007 (Doc. No. 19), a response brief filed by Defendant on December 5, 2007 (Doc. No. 25) and a reply filed by Plaintiff on December 12, 2007. (Doc. No. 26.)

The Magistrate Judge recommends that the District Court, after its independent review, grant the relief requested by Plaintiff. The final decision of the Commissioner improperly discounts Plaintiff's own subjective testimony of disability and fails to give appropriate weight to the opinion of Plaintiff's treating physician.

## PROCEDURAL HISTORY

On December 23, 2004, Plaintiff filed an application for supplemental security income (SSI) benefits alleging a disability that began on May 15, 1996. (Tr. 71-74.) Plaintiff

subsequently amended the alleged onset date to December 23, 2004. (Tr. 65.) The Social Security Administration (SSA) denied Plaintiff's application initially and again upon reconsideration. (Tr. 61-64; 57-60.) Plaintiff requested review and on April 11, 2006, appeared with counsel at a hearing before Administrative Law Judge (ALJ) Frederick J. Graf. (Tr. 14.) The ALJ found that Plaintiff was not disabled. (Tr. 14-19.) Plaintiff appealed the ALJ's decision, and the Appeals Council denied the request for review on February 9, 2007. (Tr. 4-7.) Plaintiff then filed the instant complaint in U.S. District Court, appealing the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481.

## CLAIMANT'S WORK HISTORY AND MEDICAL HISTORY

Plaintiff was born in 1959. (Tr. 71.) She worked as a receptionist/secretary from 1986 until 1996. (Tr. 141.) In 1997, Plaintiff sought treatment from Dr. Mario Valdez for complaints including fatigue and depression. (Tr. 452-496; 362-380; 422-439.) Dr. Valdez diagnosed Plaintiff with Thalassemia B anemia, chronic fatigue, depression, anxiety and peptic ulcer disease. (*Id.*; see also Tr. 524-533.) Plaintiff was prescribed supplemental iron to treat her anemia but the prescription was not continued due to Plaintiff's intolerance of the supplement. (Tr. 560-61.) Plaintiff continued to see Dr. Valdez and periodic specialty referrals were made, but no real changes occurred in the Plaintiff's treatment or symptoms. (Tr. 514-545.)

On August 24, 2004, Arizona Department of Economic Security physician Enrique Suarez, M.D. performed a consultative internal medicine evaluation of Plaintiff. (Tr. 256-258.) Dr. Suarez concluded that Plaintiff suffered from chronic anxiety and depression and Thalassemia B anemia. (Tr. 258.) He opined that Plaintiff could occasionally lift 25 pounds, frequently lift 10-15 pounds and stand or walk for 4 hours in an 8-hour day. (*Id.*) Dr. Suarez found no limitations in Plaintiff's ability to handle, finger, reach, hear, see, speak or travel. (*Id.*)

On September 17, 2004, a state agency physician assessed Plaintiff's functional capacity. (Tr. 230-237.) The state agency physician concluded that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk for 2-4 hours a day and sit about 6 hours in an 8-hour day. (Tr. 231.) The state agency physician found no manipulative, visual or communicative limitations. (Tr. 233-34.)

On May 2, 2005, Francisco Sanchez, Ph.D. performed a psychological evaluation of Plaintiff.  (Tr. 209-212.)  Dr. Sanchez concluded that Plaintiff did not suffer from any substantive mental deficits. (Tr. 212.) Dr. Sanchez also concluded, however, that Plaintiff was suffering from a stress reaction brought on by physical factors.  (*Id.*)

On October 5, 2005, a state agency physician assessed Plaintiff's limitations and determined that Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, stand or walk about 6 hours in an 8-hour day and sit about 6 hours in an 8-hour day. (Tr. 160-61.) The physician found no manipulative, visual, or communicative limitations.  (Tr. 162-63.)

On January 30, 2006, Dr. Valdez opined that Plaintiff suffered from anemia, peptic ulcer disease, overactive bladder-type symptoms, depression and chronic anxiety.  (Tr. 525.)  He concluded that Plaintiff would be able to return to work in February, 2007.  (*Id.*)

On April 4, 2006, Dr. Valdez submitted a statement of Plaintiff's capacity for work indicating that Plaintiff is unable to sustain any gainful activity due to her anemia, peptic ulcer disorder, gastric reflux, overactive bladder and depression.  (Tr. 546-49.)

At her hearing before the ALJ, Plaintiff testified that she was unable to work because of constant fatigue and depression caused by the constant fatigue. (Tr. 560-62.)  Plaintiff stated that she was being treated by Dr. Valdez and that Dr. Valdez had prescribed iron for her but that she was unable to take it because it made her ill.  (*Id.*)  Plaintiff can no longer read without being tired and needs assistance with household activities on "bad days," which occur 3-4 days out of the week.  (*Id.*)  On "good days" Plaintiff is able to go the store and run errands, but on "bad days" Plaintiff is unable to do anything at all.  (*Id.*)  Plaintiff stated that her twelve-year old daughter, her sister and her mother help her on "bad days."  (*Id.*)

## CLAIM EVALUATION

Social Security Administration (SSA) regulations require that disability claims be evaluated pursuant to a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920; *Baxter v. Sullivan,* 923 F.2d 1391, 1395 (9th Cir.1991).  The first step requires a determination of whether the claimant is engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, then the claimant is not disabled and benefits are denied.  *Id.*  If the claimant

1  is not engaged in substantial gainful activity, the ALJ proceeds to step two which requires a
2  determination of whether the claimant has a medically severe "impairment or combination of
3  impairments." 20 C.F.R. §§ 404.1520(c), 416.920(c).

4        In making a determination at step two, the ALJ uses medical evidence to consider
5  whether the claimant's impairment more than minimally limits or restricts his or her "physical
6  or mental ability to do basic work activities." *Id.* If the ALJ concludes the impairment is not
7  severe, the claim is denied. *Id.* Upon a finding of severity, the ALJ proceeds to step three
8  which requires a determination of whether the impairment meets or equals one of several listed
9  impairments that the Commissioner acknowledges are so severe as to preclude substantial
10 gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P, App.1. If
11 the claimant's impairment meets or equals one of the listed impairments, then the claimant is
12 presumed to be disabled, and no further inquiry is necessary. *Ramirez v. Shalala,* 8 F.3d 1449,
13 1452 (9th Cir.1993). If the claimant's impairment does not meet or equal a listed impairment,
14 evaluation proceeds to the next step.

15       The fourth step requires the ALJ to consider whether the claimant has sufficient residual
16 functional capacity[1] (RFC) to perform past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the
17 ALJ concludes the claimant has sufficient RFC, then the claim is denied. 20 C.F.R. §§
18 404.1520(f), 416.920(f). If the claimant cannot perform any past work due to a severe
19 impairment, then the ALJ must move to the fifth step which requires consideration of the
20 claimant's RFC to perform other substantial gainful work in the national economy in view of
21 claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(g); 416.920(g).

## THE ALJ'S FINDINGS

23       The ALJ analyzed Plaintiff's claim of disability according to the five-step procedure.
24 (Tr. 18.) At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful
25 activity since her alleged onset date. (*Id*.) At step two, the ALJ found that Plaintiff suffered

---

[1] Residual functional capacity is defined as that which an individual can still do despite her limitations. 20 C.F.R. § 404.1545.

1  from chronic fatigue syndrome, a severe impairment. (*Id.*) At step three, the ALJ found that
2  Plaintiff's impairments did not meet or equal the criteria for any impairment found in the Listing
3  of Impairments, Appendix 1, Subpart P, of 20 C.F.R., Part 404. (*Id.*) At step four, the ALJ
4  concluded that Plaintiff has sufficient RFC to lift/carry up to 10 pounds frequently and 20
5  pounds occasionally; stand and/or walk for 2 to 4 hours in an 8-hour day; sit for 6 hours in an
6  8-hour workday; frequently balance, stoop, kneel, crouch and crawl; occasionally climb
7  ramp/stairs and never climb ladder/rope/scaffolds. (*Id.*) The ALJ also found that Plaintiff
8  should avoid concentrated exposure to extreme cold/heat and hazards. (*Id.*) Accordingly, the
9  ALJ concluded that Plaintiff could return to her past relevant work as a secretary and
10 receptionist. (*Id.*) The ALJ discounted the contrary findings of Plaintiff's treating physician,
11 Dr. Valdez, and found Plaintiff's allegations of disabling pain to be not credible. (*Id.*) Because
12 the ALJ concluded that Plaintiff had sufficient RFC, Plaintiff's claim was denied at step four
13 of the review.

## STANDARD OF REVIEW

15 An individual is entitled to SSI disability benefits if he or she demonstrates, through
16 medically acceptable clinical or laboratory standards, an inability to engage in substantial
17 gainful activity due to a physical or mental impairment that can be expected to last for a
18 continuous period of at least twelve months. 42 U.S.C. § 1382c(a)(3)(A). "A claimant will be
19 found disabled only if the impairment is so severe that, considering age, education, and work
20 experience, that person cannot engage in any other kind of substantial gainful work which exists
21 in the national economy." *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir. 1993) (*quoting Marcia*
22 *v. Sullivan,* 900 F.2d 172, 174 (9th Cir. 1990)).

23 To establish a *prima facie* case of disability, the claimant must demonstrate an inability
24 to perform his or her former work. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).
25 Once the claimant meets that burden, the Commissioner must come forward with substantial
26 evidence establishing the claimant is not disabled. *Fife v. Heckler*, 767 F.2d 1427, 1429 (9th
27 Cir. 1985).

1    The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). The court may overturn the decision to deny benefits "only if it is not supported by substantial evidence or it is based on legal error." *Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted). The Commissioner's determination that a claimant is not disabled must be upheld if the Commissioner applied the proper legal standards and the record as a whole contains substantial evidence to support the decision. *Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir. 1990) (citing *Desrosiers v. Secretary*, 846 F.2d 573, 575-76 (9th Cir.1988); *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *Winans v. Bowen,* 853 F.2d 643, 644 (9th Cir. 1987). The standard is less than a "preponderance of the evidence" standard. *Matney,* 981 F.2d at 1019.

"[I]f the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney,* 981 F.2d at 1019 (citing *Richardson,* 402 U.S. at 400). When applying the substantial evidence standard, however, the court should not mechanically accept the Commissioner's findings but should review the record critically and thoroughly. *Day v. Weinberger*, 522 F.2d 1154 (9th Cir.1975). Reviewing courts must consider the evidence that supports as well as detracts from the Commissioner's conclusion. *Id*. at 1156. A denial of benefits will be set aside if the Commissioner fails to apply proper legal standards in weighing the evidence even though the findings may be supported by substantial evidence. *Frost v. Barnhart*, 314 F.3d 359, 367 (9th Cir. 2002); *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir.1978).

In evaluating evidence to determine whether a claimant is disabled, the opinion of a treating physician[2] is entitled to great weight. *Ramirez v. Shalala,* 8 F.3d 1449, 1453-54 (9th Cir. 1993). The Commissioner may reject a treating physician's uncontradicted opinion only

---

[2] The term "physician" includes psychologists and other health professionals who are not medical doctors. *Lester v. Chater*, 81 F.3d 821, 830 n.7 (9th Cir.1995).

- 6 -

if he sets forth clear and convincing reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989). If the treating physician's opinion is contradicted by another doctor, the Commissioner may reject that opinion only if he provides specific and legitimate reasons supported by substantial evidence in the record. *Lester,* 81 F.3d at 830. No distinction is drawn "between a medical opinion as to a physical condition and a medical opinion on the ultimate issue of disability." *Rodriguez v. Bowen*, 876 F.2d 759, 761 n.7 (9th Cir. 1989).

When medical reports are inconclusive, questions of credibility and resolution of conflicts in the testimony are functions solely of the Commissioner. *Magallanes,* 881 F.2d at 751 (citations omitted). The Commissioner's finding that a claimant is less than credible, however, must have some support in the record. *See Light v. Social Security Administration,* 119 F.3d 789 (9th Cir. 1997).

## DISCUSSION

Plaintiff challenges the ALJ's decision on two grounds: (1) the ALJ improperly rejected Plaintiff's testimony without providing specific, clear and convincing reasons for doing so, and (2) the ALJ improperly rejected the opinion of the treating physician without providing legitimate and specific reasons for doing so.

**1.     The ALJ's reasons for rejecting Plaintiff's testimony were not convincing**

A claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment or impairments" and "show that the impairment or combination of impairments could reasonably be expected to (not that it did in fact) produce some degree of symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir.1996). "The claimant need not produce objective medical evidence of the pain or fatigue itself or the severity thereof." *Id.* "Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom." *Id.* "Finally, the claimant need not show that her impairment could reasonably be expected to cause the *severity* of the symptom she has alleged; she need only show that it could reasonably have caused *some* degree

of symptom." *Id.* (emphasis added). This approach to the evaluation of a claimant's testimony "reflects the highly subjective and idiosyncratic nature of pain and other such symptoms." *Id.*

Once a claimant makes the required showing "and there is no affirmative evidence suggesting she is malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so." *Id.* at 1283-84. "[T]he ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Id.* at 1284.

In this case, Plaintiff produced medical evidence of underlying impairments – Thalassemia B anemia, chronic fatigue, depression, anxiety and peptic ulcer disease – that could reasonably cause the symptoms alleged. Plaintiff complained that 3-4 days out of the week, she is so tired and depressed that she can do nothing but sit in a chair or stay in bed. (Tr. 560-62.) The ALJ found no affirmative evidence of malingering; consequently, the ALJ could discount Plaintiff's testimony only after finding clear and convincing evidence for doing so. The ALJ provided three reasons for discounting Plaintiff's subjective testimony and concluding that Plaintiff was not sufficiently credible to justify any further limitations. (Tr. 17.)

First, the ALJ discounted this testimony because Plaintiff's "more recent course of treatment does not support the level of severity described by" Plaintiff. (Tr. 17.) This conclusion was not clear or convincing. Plaintiff testified at the hearing that she sees her treating physician, Dr. Valdez, on a regular basis for treatment of her fatigue and depression (Tr. 560), and the medical records submitted by Plaintiff support her testimony. Plaintiff's hearing occurred in April, 2006. She had appointments with Dr. Valdez in September 2005, October, 2005, December, 2005 and January 2006. (Tr. 182, 524-28.) These visits to Dr. Valdez' office were consistent with a long-term pattern of treatment; since 1997, Plaintiff had seen Dr. Valdez with approximately the same frequency. Records indicate visits in January, 1997 (Tr. 322), February, 1997 (Tr. 323), June, 1997 (Tr. 324), December 1997 (Tr. 325, 371), January, 1998

- 8 -

(Tr. 314), May-July, 1998 (Tr. 310-13, 454, 450), October, 1998 (Tr. 445), November, 1998 (Tr. 309), December, 1998 (Tr. 308, 443), January, 1999 (Tr. 306-7, 441), March, 1999 (Tr. 305, 435), June, 1999 (Tr. 304, 434), January, 2000 (Tr. 433), January, 2001 (Tr. 302), February, 2001 (Tr. 300), May, 2001 (Tr. 297), June 2001 (Tr. 320), August, 2001 (Tr. 319), October, 2001 (Tr. 318), November, 2001 (Tr. 317), January, 2002 (Tr. 316, 385), May, 2002 (Tr. 315), February, 2003 (Tr. 269), May, 2003 (Tr. 267), June, 2003 (Tr. 266), February, 2004 (Tr. 221, 265), July 2004 (Tr. 219), December, 2004 (Tr. 217), January, 2005.  (Tr. 189, 524.) In addition, review of Dr. Valdez's notes from the October 2005 - January, 2006 visits indicate that Dr. Valdez was continuing to refer Plaintiff to other doctors for treatment and to prescribe medications (generally rejected by Plaintiff because they made her ill) in an attempt to treat Plaintiff's symptoms.  Thus, it is not clear how Plaintiff's recent course of treatment discounts her testimony.

Second, the ALJ stated that Plaintiff's "complaints regarding the frequency, severity and duration of her chronic fatigue do not justify any further limitations than those based on the objective medical evidence and are generally consistent with the limitations found." (Tr. 17.) The ALJ did not explain why he discounted Plaintiff's testimony in reaching this conclusion. There were significant differences between the limitations recognized by the reviewing physicians and Plaintiff's testimony regarding her abilities. Dr. Suarez concluded that Plaintiff could occasionally lift 25 pounds, frequently lift 10-15 pounds and stand or walk for 4 hours in an 8-hour day. (Tr. 256-258.) Dr. Suarez found no limitations in Plaintiff's ability to handle, finger, reach, hear, see, speak or travel. (*Id*.) State agency physicians concluded that Plaintiff could occasionally lift 20-50 pounds, frequently lift 10-25 pounds, stand or walk for 2-6 hours a day and sit about 6 hours in an 8-hour day.  (Tr. 160-61, 231.)   They also found no manipulative, visual or communicative limitations. (Tr. 162-63, 233-34.)  Plaintiff testified, however, that 3-4 days out of the week, she is so tired that she cannot complete ordinary household activities and must rely on assistance from her daughter and sister. (Tr. 562.)  She testified that on "bad days" she cannot do anything but sit in a chair or stay in bed. (Tr. 563-64.)  On good days, Plaintiff said she was only able to run a few errands. (562.)  Plaintiff said

- 9 -

1  it was impossible for her to exercise because she suffered from constant fatigue. (Tr. 563.)
2  Thus, nothing in Plaintiff's testimony was consistent with the limitations found by the agency
3  physicians, who opined that Plaintiff could lift objects weighing 20-50 pounds and walk or
4  stand 2-6 hours a day; according to Plaintiff, even on a "good day" she would not be able to
5  meet those expectations.

6  Third, the ALJ concluded that although Plaintiff testified to anxiety and depression, "the
7  medical records simply do not establish a severe impairment or combination of impairments."
8  (Tr. 17.) Although this conclusion is clear, it is not a convincing reason for rejecting Plaintiff's
9  testimony. The only psychological evaluation of Plaintiff on record was performed by Dr.
10 Francisco Sanchez on May 2, 2005. (Tr. 209-212.) Dr. Sanchez did not find substantial
11 evidence of a mental disorder and concluded that Plaintiff did not suffer from any substantive
12 mental deficits. (Tr. 212.) However, Dr. Sanchez did conclude that Plaintiff suffered from
13 stress reaction brought on by other physical factors. Significantly, Dr. Valdez, Plaintiff's
14 treating physician, concluded that Plaintiff's physical impairments in combination with
15 Plaintiff's depression prevented her from working.

16 The ALJ's stated reasons for finding Plaintiff not credible were generally not well-
17 supported by the record. In addition, the factors which the ALJ may consider in rejecting a
18 plaintiff's testimony – ordinary techniques of credibility evaluation, such as the claimant's
19 reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony
20 by the claimant that appears less than candid; unexplained or inadequately explained failure to
21 seek treatment or to follow a prescribed course of treatment; and the claimant's daily activities
22 – are each consistent with the testimony provided by Plaintiff at the hearing. There is no
23 evidence in the record to suggest that Plaintiff had a reputation for lying. Her statements were
24 consistent with her reports to the doctors who treated her. She has consistently sought treatment
25 for her fatigue. Her activities of daily living are extremely limited and she is heavily reliant on
26 assistance from family members. Accordingly, the Court concludes that the ALJ improperly
27 discounted Plaintiff's testimony.
28

**2.   The ALJ failed to give appropriate weight to the opinion of Plaintiff's treating physician**

"Because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are given greater weight than the opinions of other physicians." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir.1996). If the treating physician's opinion is contradicted by another doctor, the ALJ may reject that opinion only if he provides specific and legitimate reasons supported by substantial evidence in the record. *Lester,* 81 F.3d at 830.

Here, the opinion of the treating physician, Dr. Valdez, that Plaintiff is unable to work is contradicted by the opinion of the examining physician, Dr. Suarez, and the non-examining agency physicians. The ALJ gave minimal weight to Dr. Valdez's opinions, concluding that they were not supported by objective medical evidence:

> There is no longitudinal confirmation of consistently severe limitations that would preclude the performance of sedentary exertional work for a continuous period of 12 months. Moreover, these opinions are brief and conclusory in form with little in the way of clinical findings to support their conclusions. The records are devoid of any description of detailed examinations or physical findings. Nor do the records contain any laboratory tests which would support his opinions. Dr. Valdez's opinions are not consistent with his own findings or other substantial evidence of record including the objective findings, observations, notes and opinions of other treating and examining physicians. On the whole, the doctor appears to have accepted the claimant's subjective complaints, and the above-noted opinions appear reflective of a position of "advocate" for the patient.

(Tr. 17.) The ALJ's reasons for rejecting Dr. Valdez's opinions are unsupported. First, the ALJ is inaccurate in stating that Dr. Valdez's opinion was not founded on longitudinal confirmation of Plaintiff's consistently severe limitations. Records from Dr. Valdez's files indicate the Dr. Valdez met with and examined Plaintiff on a regular basis from 1997 to 2006. Dr. Valdez has treated Plaintiff for anemia since her first appointment with him; his notes from a June, 1997 visit indicate that Plaintiff has not been able to work due to her fatigue. (Tr. 324.) Sometime prior to 2000, Dr. Valdez opined that Plaintiff was incapacitated and unable to work due to anemia and chronic fatigue; he had the same opinion in 2006. (Tr. 359.) Thus, Dr. Valdez's records confirmed consistently severe limitations over a ten-year period.

- 11 -

Second, it was not legitimate for the ALJ to conclude that Dr. Valdez's opinions were "conclusory . . . with little in the way of clinical findings [and] devoid of any description of detailed examinations . . . physical findings [or] laboratory tests which would support his opinions." Although Dr. Valdez submitted two one-page opinions stating that Plaintiff was incapacitated and unable to work, those opinions were clearly based on his ten-year history of examining and treating Plaintiff, as evidenced by the voluminous records provided by his office. Dr. Valdez's notes from each visit with Plaintiff indicate that Dr. Valdez examined Plaintiff and made physical findings. For example, Dr. Valdez' notes from his January, 2006 examination of Plaintiff indicate "BP ... in no distress but appears depressed ... clear throat ... neck is stiff ... lungs clear ... heart rhythmic, no murmur ... extremities - no ankle edema." (Tr. 528.) Dr. Valdez regularly ordered lab work for Plaintiff beginning in 1997. (Tr. 328-58.)

Third, the ALJ did not cite to any specific evidence in support of his conclusion that "Dr. Valdez's opinions are not consistent with his own findings or other substantial evidence of record including the objective findings, observations, notes and opinions of other treating and examining physicians" and that conclusion appears not to be supported by the record. The hematology specialist who treated Plaintiff concurred with Dr. Valdez's diagnosis of Thalassemia B anemia. (Tr. 360-364.) Arizona Department of Economic Security examining physician Dr. Suarez concluded that Plaintiff suffered from chronic anxiety and depression and Thalassemia B anemia. (Tr. 258.) The conclusory statement by the ALJ fails to identify a specific conflict between the opinions of the treating physician and examining physician, and fails to set forth the required "specific and legitimate reasons supported by substantial evidence" for rejecting Dr. Valdez's opinion. *Lester*, 81 F.3d at 830.

Fourth, it was unreasonable for the ALJ to fault Dr. Valdez for relying on Plaintiff's subjective complaints. Plaintiff's chronic fatigue, anxiety and depression are not impairments which are amenable to objective verification. *See Poulin v. Bowen*, 817 F.2d 865, 873 (D.C.Cir. 1987) ("[U]nlike a broken arm, a mind cannot be x-rayed . . . ."). It is therefore not surprising that Dr. Valdez's assessment relied in part on Plaintiff's subjective reports of fatigue. Considering the nature of Plaintiff's impairments, Dr. Valdez's reliance on Plaintiff's subjective

statements of her condition was not error, particularly where, as here, there was no finding that Plaintiff was not a credible witness. *See supra*.

**3.    The Court should remand for an award of benefits**

Remand for further administrative proceedings is appropriate if enhancement of the record would be useful. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.2000). Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits. *See Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir.1996); *Varney v. Secretary of Health and Human Services*, 859 F.2d 1396, 1399 (9th Cir.1988). More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if: (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Harman*, 211 F.3d at 1178; *see also McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir.2002); *Smolen*, 80 F.3d at 1292.

In this case, the ALJ improperly discounted Plaintiff's testimony about the severity of her symptoms. The ALJ also improperly rejected the opinion of her treating physician. If such evidence were credited, no outstanding issues must be resolved before a determination of disability can be made. Dr. Valdez opined, and Plaintiff also testified, that Plaintiff is incapacitated and unable to work. Pursuant to step 5 of the claim evaluation, if the Court credits the testimony of Plaintiff and her physician that Plaintiff is unable to work, Plaintiff has no RFC to perform other substantial gainful work in the national economy in view of her age, education, and work experience. 20 C.F.R. §§ 404.1520(g); 416.920(g). Accordingly, the Magistrate recommends that Plaintiff's appeal be remanded for an award of benefits.

RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Court, after its independent review, enter an order GRANTING the relief requested by Plaintiff in her opening brief (Doc. No. 19) and REMANDING Plaintiff's claim for an award of benefits.

Pursuant to 28 U.S.C. § 636(b), any party may file and serve written objections within 10 days after being served with a copy of this Report and Recommendation. If objections are not timely filed, the party's right to *de novo* review may be waived. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir.2003) (en banc), *cert. denied*, 540 U.S. 900 (2003). If objections are filed, the parties should direct them to the District Court by using the following case number: **CV 07-00150-TUC-CKJ.**

The Clerk of the Court is directed to send a copy of this Report and Recommendation to all parties.

DATED this 27th day of February, 2008.

_____
Jennifer C. Guerin
United States Magistrate Judge